1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11   TIMOTHY JOSEPH,                            No. 2:12-cv-01962-KJM-EFB

12                  Plaintiff,

13         v.                                    ORDER

14   TARGET CORPORATION, a Minnesota
     corporation; DEBBIE HEEKE; SONYA
15   MOORE; et al.,

16                  Defendants.

17

18          This matter is before the court on the motion by Target Corporation (Target),

19   Debbie Heeke, and Sonya Moore (collectively "defendants") for summary judgment.  Defs.' Mot.

20   Summ. J., ECF No. 31 (Defs.' Mot).  Plaintiff Timothy Joseph opposes the motion.  Opp'n, ECF

21   No. 36.  The court decides the matter without a hearing.  As explained below, the court DENIES

22   in part and GRANTS in part defendants' motion.

23   I.      EVIDENTIARY OBJECTIONS

24          Plaintiff makes several objections to defendants' evidence submitted with their

25   motion.  Pl.'s Obj. to Evidence, ECF Nos. 36-1, 36-2, 36-3, 36-4.  Because the court does not

26   consider the materials to which plaintiff objects in ruling on the instant motion, the court need not

27   address plaintiff's objections.  *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010).

28   /////

1

1  Even if the court were to consider the evidence to which plaintiff objects, it would not change the

2  conclusions reached below.

3       Defendants also object to portions of plaintiff's evidence.  Obj. to Pl.'s Evidence,

4  ECF No. 50-2.  Defendants object specifically to (1) Exhibits A, B, C, D, and R attached to the

5  Declaration of Lynn Garcia in support of plaintiff's opposition (ECF Nos. 42, 43, 47), saying they

6  lack foundation or personal knowledge, citing Federal Rule of Evidence 602, or are not properly

7  authenticated, citing Federal Rule of Evidence 901; (2) several statements made in depositions as

8  vague, conclusory, hearsay, lacking personal knowledge or foundation; and (3) to several

9  statements made in plaintiff's and other's sworn declarations for being irrelevant, lacking

10  personal knowledge, or being vague, conclusory, or hearsay.  *Id.*

11       To the extent defendants object on the basis of relevance, such objections "are all

12  duplicative of the summary judgment standard itself . . . [the court] cannot rely on irrelevant facts,

13  and thus relevance objections are redundant."  *Burch v. Regents of Univ. of California*, 433 F.

14  Supp. 2d 1110, 1119 (E.D. Cal. 2006).

15       The court also finds little merit generally in the objections on the basis of lack of

16  personal knowledge.  Plaintiff recounts his experiences in the course of employment, and the

17  other declarants state their relationship with plaintiff and recount their observations in working at

18  Target with plaintiff.  To the extent plaintiff or other declarants make statements regarding

19  matters to which they do not have personal knowledge, or which constitute legal conclusions, the

20  court does not rely on them in resolving the pending motion.  To the extent the court does rely on

21  plaintiff's declarations or depositions, it finds the statements cited to be based on the declarants'

22  personal knowledge and overrules the objection.

23       To the extent defendants argue plaintiff's or other declarants' statements misstate

24  the evidence, those objections are also overruled as "go[ing] to the weight of the evidence, not the

25  admissibility of the testimony."  *Galvan v. City of La Habra*, No. SACV 12-2103 JGB, 2014 WL

26  1370747, at *4 (C.D. Cal. Apr. 8, 2014); *Stonefire Grill, Inc. v. FGF Brands, Inc*., 987 F. Supp.

27  2d 1023, 1034 (C.D. Cal. 2013).

28  /////

1    Defendants' numerous hearsay objections also will not be sustained at this stage.

2  *Quanta Indem. Co. v. Amberwood Dev. Inc.*, No. CV-11-01807-PHX-JAT, 2014 WL 1246144, at

3  *3 (D. Ariz. Mar. 26, 2014) ("evidence containing hearsay statements is admissible only if

4  offered in opposition to the motion").  On summary judgment, "objections to the *form* in which

5  the evidence is presented are particularly misguided where, as here, they target the non-moving

6  party's evidence."  *Burch*, 433 F. Supp. 2d at 1119 (emphasis in original).

7    The court considers carefully the objections to the documents defendants argue are

8  not properly authenticated, specifically Exhibits A, B, C, and D attached to the Garcia

9  Declaration.  Defendants do not say these documents, consisting of copies of other Target

10 employees' Corrective Action Reports and copies of plaintiff's medical records, contain

11 inaccurate information, but question the conclusions plaintiff draws from them.  "[W]here the

12 objecting party does not contest the authenticity of the evidence submitted, but nevertheless

13 makes an evidentiary objection based on purely procedural grounds," such as that the documents

14 have not been properly authenticated, then the court should consider the evidence.  *Tompkins*,

15 2011 WL 3875643, at *7; *see also Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail*, No. 2:10-

16 CV-03048-MCE, 2013 WL 5425102, at *10 (E.D. Cal. Sept. 27, 2013) (plaintiff able to

17 authenticate the documents at trial or provide evidence in admissible form).  Moreover, the

18 documents themselves do not have any indicia of unreliability, Exhibit A consists of documents

19 produced by defendants during discovery, and defendants do not point to any particular aspect of

20 any document to undermine its authenticity.  With the exception of Exhibit A-2, which appears to

21 be aggregated Corrective Action data but is not self-authenticating, the Corrective Action Reports

22 provided by plaintiff appear identical in form to plaintiff's own Corrective Action Reports; the

23 medical records are files produced by medical providers in response to subpoenas.  *See King v.*

24 *San Joaquin Cnty. Sheriff's Dep't*, No. CIV S-04-1158 GEB KJM P, 2009 WL 577609, at *3

25 (E.D. Cal. Mar. 5, 2009), *adopted*, No. 2:04CV1158 GEB KJM P, 2009 WL 959958 (E.D. Cal.

26 Apr. 6, 2009) (plaintiff's submitted copies of medical records containing his identifying

27 information authenticated by their contents, substance and distinctive characteristics).

28 /////

3

The court may infer authenticity, and does so here for the purposes of the motion as to Exhibits A-1, B, C, and D. *Thomas v. Quintana*, No. CV 10-2671-JGB CWX, 2014 WL 5419418, at *3 (C.D. Cal. Oct. 22, 2014) ("The characteristics of the records themselves in terms of appearance, contents, and substance allow the Court to conclude that the documents have been authenticated by their distinctive characteristics and that they are what they appear to be."). Defendants' objection to Exhibit A-2, however, is sustained.

The court finds defendants' remaining numerous objections to several of plaintiff's statements offered in the form of sworn depositions and declarations, including plaintiff's own sworn declaration, are premature in the summary judgment context. *See Estate of Hernandez-Rojas ex rel. Hernandez v. United States*, No. 11CV522 L DHB, 2014 WL 4829459, at *4 (S.D. Cal. Sept. 29, 2014). As in *Burch*, "[t]he court cannot ignore the fact that a non-movant in a summary judgment setting is not attempting to prove its case, but instead seeks only to demonstrate that a question of fact remains for trial" *Burch*, 433 F. Supp. 2d at 1121 (quoting *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985)). In these circumstances, "treat[ing] the opposing party's papers more indulgently than the moving party's papers" is appropriate. *Id.*; *see also Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979). The remaining objections to plaintiff's evidence are overruled. Of course, this determination will not preclude defendants' objecting at trial on any of the grounds not sustained here.

## II.    UNDISPUTED FACTS[1]

The claims in this employment discrimination case arise out of plaintiff's employment and termination from defendant Target. *See generally* Compl., ECF No. 1.

Plaintiff, an African American, began working at Target in May 1995 as a warehouse worker. Joseph Decl. ¶ 1 Ex. A, ECF No. 49. Among his duties were to load and unload cartons from trailers, check receipts, key entries into a handheld computer and verify

---

[1] The parties have each submitted statements of material facts with their moving papers, in accordance with Local Rule 260. Defendants, with their motion, submitted a Separate Statement of Undisputed Material Facts (UMF), ECF No. 31. With his opposition, plaintiff submitted a Separate Statement of Additional Material Facts (AMF). The court has examined the record to determine whether the submitted facts are supported and there exists a genuine dispute. If a fact is disputed, it is not included in this section.

1   figures.  Moore Dep. 127:18-25; Heeke Dep. 131:15-132:1; Cason Dep. 44:1-15, 47:11-20, 50:8-

2   51:12, 51:22-52:5.  Plaintiff received positive employment reviews throughout his employment

3   (ECF Nos. 49-2, 49-3), with the only incident prior to 2010 occurring on or about June 12, 2009,

4   when he was issued a Corrective Action for an unsafe act because he sat on a conveyor belt

5   known as an "extendoveyer."  Joseph Decl. ¶ 8.  He also worked as a team trainer, responsible for

6   training new employees coming to his department.  *Id*. ¶ 3.

7          Although the nature and extent of plaintiff's disability remains disputed, it is

8   undisputed plaintiff suffered a heart attack on November 13, 2009, and as a result, had difficulties

9   with memory loss.  Physician's Supplementary Certificate, ECF No. 49-4 Ex. E (noting plaintiff

10   "has short-term memory loss [and] cognitive issues from the cardiac arrest").  Following his heart

11   attack, plaintiff took a leave of absence from work beginning November 13, 2009.  *Id*. ¶¶ 9-13,

12   16; UMF 3.  Plaintiff returned to work on March 1, 2010.  *Id*.  Before returning to work, plaintiff

13   was treated by a neurologist, Dr. Halima Karim.  Karim Dep. Ex. O, ECF No. 46-4 26:23-25.  Dr.

14   Karim testified that a patient cannot entirely recover from short-term memory loss, but can "work

15   fine with some help" such as "taking notes."  *Id*. 21:18-23.  She expects plaintiff to permanently

16   experience problems with 5-20 percent of his memory.  *Id*. 31:9-12; 41:9-20.  His memory is

17   worsened by stress.  *Id*. 49:1-4.  Upon his return to work, plaintiff required assistance on a few

18   basic aspects of the job, such as using the handheld scanner.  Joseph Dep. 68:13-24, 103:2-

19   104:20.  He explained to his coworkers he was having trouble with his memory.  Joseph Decl. ¶

20   17.

21          After his return to work, defendant Team Leader Heeke had discussions on at least

22   two occasions with plaintiff about his bathroom breaks.  *Id*. ¶¶ 28, 40.  In these discussions, she

23   advised him to take breaks at better times, and to use the bike provided to travel to the restroom to

24   shorten the length of the break.  *Id*.  On another occasion, plaintiff placed a record-breaking

25   number of cartons from the trailer to the processing line, which is part of his job duties.  *Id*. ¶ 36.

26   However, he was reprimanded for being in the trailer for too long, as such ceaseless repetitive

27   movement could result in injury.  *Id*.  On another occasion, he was reprimanded for being on the

28   forklift too long and "standing around."  Joseph Dep. 418:24-419:4, 421:12-422:12.  On yet

1    another occasion, Team Leader and defendant Moore asked plaintiff while he was working if he

2    could handle the heat inside the trailer.  Joseph Dep. 185:19-186:9.

3            Target's Counseling and Corrective Action Policy provides that any Team

4    Member who receives three corrective actions in a rolling one year period, regardless of whether

5    the corrective action is counseling, a written warning, or a final warning, will receive a "Final

6    Warning for Multiple Violations."  Heeke Decl. ¶ 6, ECF No. 31-4.  According to the policy, any

7    team Member who receives any additional corrective action for negative performance or conduct

8    during the subsequent one-year period will be terminated.  *Id*.  There is some discretion in issuing

9    these corrective actions, and assessing the type of corrective action issued.  Bumbernick Dep.,

10   74:14-75:17, 76:9-77:6.

11           In March 2010, shortly after his return to work, plaintiff informed Group Leader

12   Lance Cason plaintiff was having trouble remembering procedures.  Joseph Decl. ¶ 24.

13           On or about April 9, 2010, plaintiff received a second Corrective Action[2] for

14   Negligent Conduct from Group Leaders Lance Cason and Sonya Moore.  Ex. G, ECF No. 49-6.

15   They concluded plaintiff had failed to immediately report a safety incident, namely his dropping

16   of a "chep pallet."[3]  *Id*.

17           Plaintiff received a performance review on April 19, 2010.  Ex. H, ECF No. 49.

18   The review noted plaintiff's need for improvement in some areas, including reliability, safety, and

19   productivity.  *Id*.  The review stated plaintiff is an "asset" due to his "experience and depth of

20   knowledge."  *Id*.  It also noted that since plaintiff's return, he "indicated some challenges

21   remembering some aspects of receiving."  *Id*.

22           On May 25, 2010, plaintiff received a third Corrective Action (Final Warning) for

23   disorderly conduct from Group Leader Debbie Heeke for tossing a box to another employee.  Ex.

24   J, ECF No. 49-9.  Plaintiff received this as a final warning because plaintiff had, with this notice,

25           [2] The first was issued on June 2, 2009, when plaintiff was disciplined for standing on a
26   conveyor belt.  Joseph Decl. ¶ 8.  The Corrective Action was to expire on December 12, 2009, but
     was extended to cover the time plaintiff was on leave.  Ex. E, ECF No. 49-5.

27           [3] The parties do not define "chep pallet," but it appears such a pallet is a transport
     structure that supports goods and makes it easier for warehouse workers to move heavy
28   containers.  *See* CHEP Pallets, http://www.chep.com/pallets (last visited Jan. 15, 2015).

6

1    accumulated three Corrective Actions in a rolling 12-month period. Ex. K, ECF No. 49-10.  In

2    June 2010, plaintiff began taking intermittent Family Medical Leave Act (FMLA) leave for stress.

3    Joseph Decl.¶ 25.  The letter from Target to plaintiff considering his request for leave called this a

4    "serious health condition." Ex. I, ECF No. 49-8.  On or about July 22, 2010, Target investigated

5    a complaint made by a Team Member, Rodrigo Fajardo, that plaintiff had yelled at him for being

6    on the forklift.  Podsakoff Dep. 76:9-79:6, 80:2-81:16.

7            Plaintiff was terminated on July 27, 2010, based on Heeke's recommendation and

8    approved by Human Resources Manager Kylie Podsakoff.  Heeke Decl. ¶ 28 & Ex. C.  He was 53

9    years old at the time.  Joseph Decl. ¶¶ 34, 42.  Plaintiff sought review of his termination by a

10   separate Human Resources review process.  Joseph Dep. at 31:22-25.  In a conversation with a

11   Human Resources employee, Stephanie Gorgos, and subsequent written correspondence, plaintiff

12   explained he believed his termination was unwarranted, he was experiencing short term memory

13   loss and stress, and he had been treated unfairly after his heart attack and leave of absence.  *Id*.

14   33:19-25, 366:22-25.  The review process affirmed plaintiff's termination on August 27, 2010.

15   Letter to Timothy Joseph from Target Human Resources Ex. B, ECF No. 50-1.

16           Plaintiff filed a complaint against defendants Target, Heeke and Moore with the

17   California Department of Fair Employment and Housing ("DFEH") on March 28, 2011, and

18   received a right-to-sue letter from the EEOC on April 4, 2012.  Defs.' Mot. at 7; Compl. ¶ 39.

19   His complaint alleged discrimination on the basis of race, color, disability, age, and denial of

20   family medical leave.  *Id*.

21            Plaintiff filed a complaint in state court on June 22, 2012, alleging sixteen claims

22   under state and federal law: (1) discrimination in violation of California Government Codes §§

23   12978 and 12940(a) (California Fair Employment and Housing Act ("FEHA")); (2) harassment in

24   violation of California Government Code § 12940(j) (FEHA); (3) retaliation in violation of

25   California Government Code § 12940(h) (FEHA); (4) failure to prevent discrimination,

26   harassment, and retaliation in violation of California Government Code § 12940(k) (FEHA); (5)

27   discrimination in violation of 42 U.S.C. § 12112 (Americans with Disabilities Act (ADA)); (6)

28   failure to accommodate in violation of 42 U.S.C. § 12112(b)(5)(A) (ADA); (7) failure to

1   accommodate in violation of California Government Code § 12940(k) (FEHA); (8) failure to

2   engage in interactive process in violation of California Government Code § 12940(n) (FEHA); (9)

3   discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967

4   (ADEA), as amended, 29 U.S.C. §§ 621 et seq., 29 U.S.C. §§ 215 et seq.; (10) discrimination on

5   the basis of race, color, and national origin in violation of Title VII of the Civil Rights Act of

6   1964, codified at 42 U.S.C. §§ 2000e, et seq.; (11) discrimination on the basis of race, color,  and

7   national origin in violation of 42 U.S.C. § 1981, as amended, Civil Rights Act of 1866, as

8   amended; (12) retaliation in violation of 42 U.S.C. § 1981, as amended, Civil Rights Act of 1866,

9   as amended; (13) retaliation in violation of California Government Code § 12945.2(l), the

10  California Family Rights Act (CFRA), and 29 U.S.C. § 2615 (FMLA); (14) wrongful termination

11  in violation of public policy; (15) breach of covenant of good faith and fair dealing; (16)

12  intentional infliction of emotional distress.  ECF No. 1.  Plaintiff seeks general, special,

13  incidental, and consequential damages according to proof at time of trial, punitive damages,

14  prejudgment interest, costs of suit and attorneys' fees, statutory civil penalties, and any such

15  further relief the court deems just and proper.  *Id.* at 38.  Defendants removed the case to this

16  court from Yolo County Superior Court on July 26, 2012.  *Id.*  Defendants now move for

17  summary judgment on all of plaintiff's claims and his prayer for punitive damages.  Defs.' Mot.,

18  ECF No. 31.  Plaintiff opposes the motion (Opp'n, ECF No. 36), and defendants have replied.

19  Reply, ECF No. 50.

20  III.    <u>SUMMARY JUDGMENT STANDARD</u>

21          A court will grant summary judgment "if . . . there is no genuine dispute as to any

22  material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

23  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

24  resolved only by a finder of fact because they may reasonably be resolved in favor of either

25  party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[4]

26  _____

27          [4] Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on
    cases decided before the amendment took effect, as "[t]he standard for granting summary
    judgment remains unchanged."  FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010

28  amendments.

1   The moving party bears the initial burden of showing the district court "that there

2   is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*,

3   477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish

4   that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio

5   Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular

6   parts of materials in the record . . .; or show [] that the materials cited do not establish the absence

7   or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

8   support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

9   nonmoving party] must do more than simply show that there is some metaphysical doubt as to the

10   material facts").  Moreover, "the requirement is that there be no *genuine* issue of *material* fact

11   . . . .  Only disputes over facts that might affect the outcome of the suit under the governing law

12   will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248 (emphasis in

13   original).

14   In deciding a motion for summary judgment, the court draws all inferences and

15   views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at

16   587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).   "Where the record taken as a

17   whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

18   issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv.

19   Co.*, 391 U.S. 253, 289 (1968)).

20   A court may consider evidence as long as it is "admissible at trial." *Fraser v.

21   Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  "Admissibility at trial" depends not on the

22   evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001)

23   (citing *Celotex Corp.*, 477 U.S. at 324).  The party seeking admission of evidence "bears the

24   burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir.

25   2002).  If the opposing party objects to the proposed evidence, the party seeking admission must

26   direct the district court to "authenticating documents, deposition testimony bearing on attribution,

27   hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in

28   question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86

9

1   (9th Cir. 2010).  However, courts are sometimes "much more lenient" with the affidavits and

2   documents of the party opposing summary judgment.  *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240,

3   1243 (9th Cir. 1979).

4   IV.      DISCUSSION

5        A.       Disability Harassment and Discrimination (Claims 1, 2, 5, 6, 7)

6                 Plaintiff alleges discrimination on the basis of disability in violation of the Fair

7   Employment and Housing Act, California Government Codes 12940(j) and 12940(m) (FEHA),

8   and the Americans with Disabilities Act, 42 U.S.C. § 12112  (ADA).  He argues his disability and

9   medical condition were a substantial factor in the decision to terminate him.  Compl. ¶ 47.  He

10  contends he was subjected to unwarranted scrutiny, reprimands, counseling, warnings, and write-

11  ups, and such actions were pretextual.  *Id.*  He further contends defendants failed to accommodate

12  his disability in violation of the ADA and FEHA.  Compl. ¶¶ 90, 97, 111.

13               Defendants argue plaintiff's disability claims must fail as a matter of law because

14  plaintiff was not disabled under the applicable statutes, and even if he were, he cannot show any

15  harassing behavior attributable to his disability.  Defs.' Mot. at 9.

16       1.       Disability:  Threshold Determination

17               In determining whether plaintiff has established a prima facie case, the court must

18  look to whether plaintiff has sufficiently met the standard of disability as defined by FEHA and

19  the ADA.  *E.E.O.C. v. United Parcel Serv., Inc*., 424 F.3d 1060, 1068 (9th Cir. 2005) (FEHA);

20  *see Nunes v. Wal–Mart Stores, Inc*., 164 F.3d 1243, 1246 (9th Cir. 1999) (ADA).  As FEHA and

21  the ADA articulate different standards, the court will examine each in turn. *United Parcel Serv.*,

22  424 F.3d at 1068.

23       a.       ADA

24               Under the ADA, "disability" is defined as "a physical or mental impairment that

25  substantially limits one or more of the major life activities of the individual."  42 U.S.C.

26  § 12102(2)(A).  "An impairment is a disability . . . if it substantially limits the ability of an

27  individual to perform a major life activity as compared to most people in the general population.

28  An impairment need not prevent, or significantly or severely restrict, the individual from

1    performing a major life activity in order to be considered substantially limiting." *Weaving v. City*

2    *of Hillsboro,* 763 F.3d 1106, 1111 (9th Cir. 2014), *pet. for cert. filed*, 2014 WL 7463964 (U.S.

3    Dec. 29, 2014) (No. 14-766) (citing 29 C.F.R. § 1630.2(j)(1)(ii)).

4            Here, plaintiff alleges memory loss, stress, and digestive issues as a result of his

5    heart attack.  Compl. ¶¶ 14, 28, 31.  Plaintiff supplies medical records and the testimony of his

6    neurologist, Dr. Karim, indicating plaintiff experiences a "mild short-term memory problem."

7    Karim Dep. 6:14-15.  His neuropsychologist, Dr. Robert Allen, notes the oxygen deprivation or

8    "anoxia" that occurred in conjunction with his heart attack has caused memory loss.  Allen Decl.

9    at 2, ECF No 48.  Plaintiff also offers declarations from his coworkers observing plaintiff had

10   difficulty processing information.  Brown Decl. 2:6-7; Corum Decl. 2:10-17, 3:20; Dye Decl. 2:4-

11   7; Aceves Decl. 2:12-18, ECF Nos. 36, 37.  His 2010 performance review noted plaintiff

12   previously indicated "some challenges remembering some aspects of receiving."  Performance

13   Review Ex. H, ECF No. 49-7.  After his heart attack, plaintiff was placed on a special high-fiber

14   diet requiring milk consumption, though he is lactose intolerant.  Joseph Decl. ¶ 28.  As a result,

15   plaintiff experienced issues in needing to use the bathroom more frequently, for which he was

16   reprimanded.  *Id*.

17           To qualify as disabled under the ADA, the disability must meet a high bar of

18   severity, duration, and impact on plaintiff's ability to work.  *Weaving*, 763 F.3d at 1106.  It is

19   disputed how much, if at all, plaintiff's alleged memory loss, stress, and digestive issues impacted

20   his ability to work.  Plaintiff has presented sufficient evidence such that a trier of fact could find

21   his mental and physical deficits substantially limited his ability to perform his job.  Defendants

22   are not entitled to the finding that as a matter of law, plaintiff is not disabled under the ADA.

23                        b.      FEHA

24           FEHA requires only a "limitation" on a major life activity, but does not require the

25   ADA's "substantial limitation."  That distinction is intended to result in broader coverage under

26   California law than under federal law.  *Diaz v. Fed. Express Corp*., 373 F. Supp. 2d 1034, 1048-

27   49 (C.D. Cal. 2005) (discussing the distinction between FEHA and ADA standards for

28   determining disability).  As plaintiff here has met the higher burden of the ADA, he meets the

                                                    11

1    FEHA standard as well.  *Bryan v. United Parcel Serv., Inc*., 307 F. Supp. 2d 1108, 1115 (N.D.

2    Cal. 2004), *aff'd sub nom. E.E.O.C. v. United Parcel Serv., Inc*., 424 F.3d 1060 (9th Cir. 2005).

3            Therefore, the court turns to plaintiff's claims of harassment and discrimination as

4    a result of his disability.

5                    2.      Harassment/Hostile Environment

6            Plaintiff contends as a result of his disability, he was reprimanded and targeted by

7    his supervisors.  He contends he was subjected to harassment and intimidation.  Compl. ¶¶ 56, 88.

8    Defendants contend plaintiff's harassment claims must fail because he cannot establish he was

9    subjected to harassing conduct, or that any such conduct was severe or pervasive.  Defs.' Mot. at

10   14.

11           FEHA makes it unlawful "[f]or an employer . . . or any other person, because of

12   race, religious creed . . . physical disability, mental disability, medical condition, genetic

13   information, marital status, sex, gender, gender identity, gender expression, age . . . to harass an

14   employee[.]"  Cal. Gov't Code § 12940(j)(1).  The law specifically makes harassment by an

15   employee unlawful.  *See* Cal. Gov't Code § 12940(j)(3) ("An employer . . . is personally liable for

16   any harassment prohibited by this section that is perpetrated by the employee, regardless of

17   whether the employer . . . knows or should have known of the conduct and fails to take immediate

18   and appropriate corrective action.").

19           The elements for a claim of hostile environment under FEHA are: (1) the plaintiff

20   belongs to a protected group; (2) the plaintiff was subjected to unwelcome harassment because of

21   being a member of that group; and (3) the harassment was sufficiently severe or pervasive to alter

22   the conditions of employment and create an abusive working environment.  *See Aguilar v. Avis*

23   *Rent A Car System, Inc.*, 21 Cal. 4th 121, 130 (1999).  To fulfill the "severe or pervasive" prong,

24   a plaintiff must show a "concerted pattern of harassment of a repeated, routine, or generalized

25   nature."  *Id*. at 131.  Isolated incidents that do not exist in a concerted pattern can also fulfill the

26   "severe or pervasive" prong, but only if such isolated incidents consist of "a physical assault or

27   the threat thereof."  *Hughes v. Pair*, 46 Cal. 4th 1035 (2009) (quoting *Lyle v. Warner Bros.*

28   *Television Prods.*, 38 Cal. 4th 264, 284 (2006)).  Further, the prohibition of harassment "forbids

1   only behavior so objectively offensive as to . . . create a hostile or abusive work environment."

2   *Lyle*, 38 Cal. 4th at 283.   Whether an environment is hostile or abusive can be determined "only

3   by looking at all the circumstances [including] the frequency of the discriminatory conduct; its

4   severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

5   whether it unreasonably interferes with an employee's work performance."   *Id*. at 283 (citation

6   omitted).   Merely "offensive comments" in the workplace are not actionable.   *See id*. (citation

7   omitted).

8          In this case, in the months immediately preceding and after his heart attack,

9   plaintiff avers he was subjected to "nitpicking" from his supervisor Moore.   AMF 218.   When

10   Heeke became his supervisor, plaintiff offers evidence other employees noticed she treated

11   plaintiff differently from other employees.   Brown Decl., ECF No. 37-1, Corum Decl., ECF No.

12   37-2.   Plaintiff was reprimanded on several occasions, and for actions for which other employees

13   were not written up.   Joseph Decl. ¶ 32; Dye Decl. ¶ 8; Aceves Decl. ¶ 12; Brown Decl. ¶ 17.

14   Plaintiff claims Moore and Heeke would question him about being away from his work area,

15   criticize him for not working fast enough, not having his name on a particular work list, not

16   "flexing" or rotating to different jobs, and standing around during a slow period instead of finding

17   other work to do.   UMFs 42-48.   Plaintiff complained to Jenine Smith in Human Resources, Dana

18   Stansel, the General Manager, and Chris Whitehurst, another supervisor, about his reprimands.

19   Joseph Decl. at 11.   When Heeke was told plaintiff complained to Smith, plaintiff claims Heeke's

20   hostile behavior increased.   AMF 227.   Plaintiff avers he became afraid to go to work every day

21   for fear of getting in trouble with Heeke and Moore.   Joseph Decl. at 9:25-28.

22          In the time leading up to his termination, plaintiff contends Heeke and Moore

23   approached the plaintiff to talk about his heart attack in a manner that "looked a little bit hostile"

24   and "would talk to him in close proximity to his face."   Reply in Opp'n to Separate Statement at

25   22, ECF No. 37.   Heeke and Moore would approach plaintiff twice a day and speak to him for

26   more than a half hour at a time.   Acevedo Decl. 32:15-33:1, ECF No. 47-1.   Plaintiff offers sworn

27   testimony from other employees stating they observed defendants Moore and Heeke watching the

28   plaintiff.   Brown Decl. ¶ 8, ECF No. 37-1; Corum Decl. ¶ 19, ECF No. 37-2.   Another coworker

1   had "a perception [plaintiff] was being harassed."  Slater Dep. at 72:13-73:24, ECF No. 47-2.

2   The coworker also says Heeke would reprimand plaintiff on a daily basis for talking to other

3   employees, but did not reprimand the employees to whom he was speaking.  *Id.* at 38:16-39:17.

4   Plaintiff concedes this behavior was not threatening, but states he was watched constantly by

5   supervisors looking for a mistake.  Reply at 40.

6          Given the record before the court, Heeke's and Moore's behavior does not rise to

7   the level of severity such that a reasonable fact finder could find it abusive, physically

8   threatening, or humiliating.  Plaintiff does not establish a sufficient pattern of conduct or allege

9   intimidating or demeaning comments.  He avers only that he was watched and reprimanded when

10  engaging in behavior that was contrary to Target policies.  Such supervision and reprimands are

11  not harassment, but behavior expected from supervisors.  *See Lawler v. Montblanc N. Am., LLC*,

12  704 F.3d 1235, 1245 (9th Cir. 2013) ("Defendant's alleged [critical, questioning, instructive]

13  conduct relates to business operations and, more specifically, to [defendant's] position as a

14  manager.  Such conduct does not constitute harassment under the FEHA.").  Summary judgment

15  is granted to defendants on this claim.

16          3.      Discrimination

17          Analysis of plaintiff's discrimination claim proceeds under the burden-shifting

18  framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S.

19  792 (1973).  *See Guz v. Bechtel Nat'l, Inc*., 24 Cal. 4th 317, 354 (2000); *see also Mamou v.*

20  *Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 713–15 (2008).  "Under the three-part *McDonnell*

21  *Douglas* test, the plaintiff bears the initial burden of establishing a prima facie case of

22  employment discrimination."  *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th

23  Cir. 2011) (citing *Noyes v. Kelly Services*, 488 F.3d 1163, 1168 (9th Cir. 2007)).  "Generally, the

24  plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was

25  qualified for the position he sought or was performing competently in the position he held, (3) he

26  suffered an adverse employment action, such as termination, demotion, or denial of an available

27  job, and (4) some other circumstance suggests discriminatory motive."  *Guz,* 24 Cal. 4th at 355.

28  /////

1    The plaintiff's burden is to show that the adverse action "is more likely that not"

2    based on a prohibited discriminatory reason. *Id*. Meeting that burden raises a "presumption of

3    discrimination." *Id*. The burden then shifts to the employer to rebut the presumption with

4    admissible evidence of a "legitimate, non-discriminatory reason" for the action. *Id*. If defendants

5    meet that burden, the burden shifts back to plaintiff to show the offered reason is pretextual. *Id*.

6    Pretext can be shown "directly, by showing that unlawful discrimination more likely than not

7    motivated the employer; or indirectly, by showing that the employer's proffered explanation is

8    unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl*, 658

9    F.3d at 1112–13 (citing *Chuang v. University of California Davis, Bd. of Trustees*, 225 F.3d 1115,

10    1127 (9th Cir. 2000)).

11    To argue pretext with circumstantial evidence, as plaintiff does here, plaintiff

12    "must produce 'specific' and 'substantial' facts to create a triable issue . . ." *Earl*, 658 F.3d at

13    1113 (citing *Godwin v. Hunt Wesson, Inc*., 150 F.3d 1217, 1222 (9th Cir. 1998)); *see also*

14    *Department of Fair Employment and Housing v. Lucent Technologies*, 642 F.3d 728, 746 (9th

15    Cir. 2011) (citing *Morgan v. Regents of the Univ. of Cal*., 88 Cal. App. 4th 52 (2000)) ("An

16    employee in this situation cannot simply show the employer's decision was wrong, mistaken or

17    unwise. Rather, the employee must demonstrate such weaknesses, implausibilities,

18    inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for

19    its action that a reasonable factfinder could rationally find them unworthy of credence . . . and

20    hence infer that the employer did not act for the . . . non-discriminatory reasons."). Plaintiff's

21    burden is not particularly heavy. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th

22    Cir. 2008) (citing *Chuang*, 225 F.3d at 1124) ("As a general matter, the plaintiff in an

23    employment discrimination action need produce very little evidence in order to overcome an

24    employer's motion for summary judgment.").

25    As discussed above, plaintiff has satisfied the first *Guz* factor by showing he is a

26    member of a protected class as a person with a disability. To satisfy the second *Guz* prong,

27    plaintiff has shown a factfinder could find he was performing his job in an acceptable manner.

28    Although his performance review in the relevant time period is below the standard of his previous

1   reviews, it states that plaintiff is an "asset" and does not indicate plaintiff was unable to perform

2   his job duties; it says only that he was having challenges with work, and suggests these challenges

3   may be attributable to his memory issues.  Performance Review Ex. H at 3, ECF No. 49-7.  The

4   third prong is not disputed: his termination is an adverse employment action.  Regarding the

5   fourth prong, the record discloses inconsistent and unexplained motivations for plaintiff's

6   termination.  His alleged violations were infrequent, relatively minor, and not of the sort

7   automatically giving rise to Corrective Actions.  Joseph Decl. ¶ 8; Dye Decl. ¶ 8; Aceves Decl. ¶

8   12.  Plaintiff has sufficiently established a presumption of discrimination.  *See Foster v. City of*

9   *Oakland*, 649 F. Supp. 2d 1008, 1018 (N.D. Cal. 2009) (prima facie case of disability

10   discrimination established where employer had actual notice of the disability at the time it

11   occurred because plaintiff was severely injured at work and did not return to full time work for

12   almost two months, complained he was having trouble focusing and verbalizing, and was

13   terminated only approximately seven months later).

14        As explained above, Target has met its burden to demonstrate a legitimate, non-

15   retaliatory reason for termination through plaintiff's documented Corrective Actions and "bottom

16   performer" and "needs improvement" performance review.

17        The final step of the *McDonnell Douglas* analysis requires plaintiff to raise a

18   genuine issue of fact concerning whether the facially legitimate reasons proffered by Target are

19   pretextual.  Having reviewed the record and all competent and admissible evidence, the court

20   finds a reasonable trier of fact could infer plaintiff's termination was pretextual once the burden

21   shifts back to plaintiff, as it does here.  He offers testimony from other employees that they

22   believed he was targeted and singled out for reprimands for issues related to his disability.  *See,*

23   *e.g.,* Acevedo Decl. ECF No. 47-1; Slater Dep. ECF No. 47-2; Dye Decl. ECF No. 36-8.  The

24   targeting began immediately after plaintiff returned from medical leave.  *Id*.  Plaintiff has

25   presented triable issues of fact precluding summary judgment on his disability discrimination

26   claims.

27   /////

28   /////

16

1          4.      Failure to Accommodate

2          Plaintiff claims a failure to accommodate his disability in violation of the ADA

3  and California Government Code section 12940(m) (FEHA).  Plaintiff alleges he asked for

4  reasonable accommodations for his disability and mental condition (Compl. ¶¶ 90, 97, 111),

5  defendants intentionally failed to reasonably accommodate him, and in fact "reprimanded him

6  and made negative comments about his medical leave, his loss of memory, and his absences from

7  work necessitated by plaintiff's recovery."  *Id*. ¶ 90.  In his opposition to defendants' motion for

8  summary judgment, plaintiff further argues that because Target outsources administration of

9  worker's compensation and FMLA matters to a third party, there are no "checks and balances" to

10  assure a worker is accommodated.  Opp'n at 10.  Plaintiff contends this outsourcing "had to have

11  been intentional" on Target's part, and resulted in a failure to adequately accommodate plaintiff's

12  alleged disability.  *Id.*

13          Defendants argue plaintiff never requested an accommodation for his disability

14  beyond the leave he was granted.  Although plaintiff in his opposition outlines some

15  accommodations that would have been helpful - allowing him to take notes, temporarily

16  restricting his job and work demands, providing him with a mentor -, defendants say there is no

17  evidence plaintiff was prevented from doing these things or that accommodations were

18  unavailable.  Defs.' Mot. at 8.  Defendants argue plaintiff's medical and FMLA leave was

19  unobstructed and he did not request any accommodation beyond what he was granted, nor did he

20  give notice he was experiencing issues requiring more accommodation.  *Id.*

21          The record reflects plaintiff was released to work by his doctor without restrictions

22  (Medical Release Ex. M, ECF No. 49-12), and the subsequent FMLA leave he requested was due

23  to stress, not memory, cognitive, or digestive issues.  FMLA Form Ex. I, ECF No. 49-8.

24  /////

25  /////

26  /////

27  /////

28  /////

17

1    The FEHA provides, in pertinent part:

2    Reasonable accommodation' may include either of the following:
(1) Making existing facilities used by employees readily accessible
3    to, and usable by, individuals with disabilities (2) Job restructuring,
part-time or modified work schedules, reassignment to a vacant
4    position, acquisition or modification of equipment or devices,
adjustment or modifications of examinations, training materials or
5    policies, the provision of qualified readers or interpreters, and other
similar accommodations for individuals with disabilities.

6

7    Cal. Gov't Code § 12926(o).  This definition is virtually identical to the ADA's statutory

8    definition of [reasonable accommodation], which is also by way of example. 42 U.S.C. §

9    12111(9); *see also* 29 C.F.R. § 1630.2(o )(2); *Nadaf-Rahrov v. Neiman Marcus Grp., Inc*., 166

10   Cal. App. 4th 952, 974 (2008).  A California state appellate court found the regulations

11   interpreting the ADA to be instructive in interpreting FEHA.  *Nadaf-Rahrov*, 166 Cal. App. 4th at

12   974 .  Relying principally on the federal regulations implementing the equal employment

13   provisions of the ADA, the court defined "reasonable accommodation" as "a modification or

14   adjustment to the workplace that enables the employee to perform the essential functions of the

15   job held or desired." *Id.*

16           Determining whether reasonable accommodation has been made is a fact-specific

17   individualized inquiry that takes into account the totality of the circumstances.  *See Hanson v.*

18   *Lucky Stores, Inc.,* 74 Cal. App. 4th 215, 228 n.11 (1999*)*; *Nunes*, 164 F.3d at 1247; *Zukle v.*

19   *Regents Of The Univ. Of Cal.*, 166 F.3d 1041, 1048 (9th Cir. 1999).  In the context of a summary

20   judgment motion on the issue of failure to accommodate, a plaintiff must demonstrate he is a

21   qualified individual with a disability and the employer failed to make a reasonable

22   accommodation.  *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 256 (2000).  An employer

23   can prevail on summary judgment if it, fundamentally, "establishes through undisputed facts that

24   . . . reasonable accommodation was offered." *Id.* at 263; *see also Smith v. Sears, Roebuck & Co*.,

25   207 F. Supp. 2d 1031, 1035 (N.D. Cal. 2002).  The employer cannot prevail on summary

26   judgment on a claim of failure to reasonably accommodate unless it establishes through

27   undisputed facts that (1) reasonable accommodation was offered and refused; (2) there simply

28   was no vacant position within the employer's organization for which the disabled employee was

18

1  qualified and which the disabled employee was capable of performing with or without

2  accommodation; or (3) the employer did everything in its power to find a reasonable

3  accommodation, but the informal interactive process broke down because the employee failed to

4  engage in discussions in good faith.  *See Jensen*, 85 Cal. App. 4th at 263.

5          Having reviewed the pleadings of record and all competent and admissible

6  evidence submitted, the court finds a triable issue as to whether plaintiff was given reasonable

7  accommodations for his alleged and perceived disabilities.  Again, for purposes of this motion,

8  plaintiff has established a question of fact as to his disability.  It is disputed whether plaintiff's

9  supervisor, Lance Cason, granted plaintiff intermittent FMLA stress leave to actually address

10 plaintiff's disability.  Cason Decl. ¶ 18; Joseph Decl. ¶ 24.  The leave was granted after plaintiff

11 submitted a doctor's certification stating he suffered from stress that made it difficult for him to

12 perform his job.  Joseph Decl. at 9.  Medical leave is not a reasonable accommodation when the

13 leave causes termination, or where the employer does not also address the underlying disability –

14 memory loss, cognitive issues, and digestive issues.  *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d

15 1128, 1135–36 (9th Cir. 2001) (recognizing that a leave of absence may be a reasonable

16 accommodation under the ADA only where it "would reasonably accommodate an employee's

17 disability and permit him, upon his return, to perform the essential functions of the job").  Here,

18 because plaintiff accepted the FMLA leave, defendant must demonstrate there were no other

19 positions for plaintiff, or plaintiff failed to engage in good faith in an interactive process.  *Jensen*,

20 85 Cal. App. at 261.  Defendant has done neither.  Summary judgment is denied as to this claim.

21          B.      Failure to Prevent (Claim 4)

22          Defendants move for summary judgment on plaintiff's failure to prevent

23 harassment or discrimination claim. They argue because he cannot sustain his statutory

24 harassment and discrimination claims, his corresponding failure to prevent claim fails as a matter

25 of law.  The court has not dismissed all of plaintiff's statutory claims for discrimination and

26 retaliation.  Accordingly, summary judgment of the cause of action for failure to prevent such

27 actions must be denied.

28 /////

1         C.     Failure to Engage in the Interactive Process (Claim 8)

2         Under FEHA, it is unlawful for an employer "to fail to engage in a timely, good

3    faith, interactive process with the employee or applicant to determine effective reasonable

4    accommodations, if any, in response to a request for reasonable accommodation by an employee

5    or applicant with a known physical or mental disability or known medical condition."  Cal. Gov't

6    Code § 12940(n).  "I[t] is the employee's initial request for an accommodation which triggers the

7    employer's obligation to participate in the interactive process of determining one."  *Spitzer v.*

8    *Good Guys, Inc*., 80 Cal. App. 4th 1376, 1384 (2000) (internal quotation marks omitted).  Here, it

9    is undisputed that plaintiff did request an accommodation in the form of leave.  Joseph Decl. ¶ 25;

10   UMF 3.

11        "Once a disabled employee has given an employer notification of [his] disability

12   and the desire for accommodation, there is a mandatory obligation to engage in an informal

13   interactive process to clarify what the individual needs and identify the appropriate

14   accommodation."  *Snapp v. United Transp. Union*, 547 F. App'x 824, 825 (9th Cir. 2013)

15   (internal citations and quotations omitted).  In short, "[t]he interactive process requires

16   communication . . . between employers and individual employees, and neither side can delay or

17   obstruct the process."  *Humphrey*, 239 F.3d at 1137.  Ultimately, to succeed on an interactive

18   process claim, the employee must show that a triable issue exists as to whether the employer

19   "bears responsibility for the breakdown."  *Nadaf–Rahrov*, 166 Cal. App. 4th at 985.  "[A]n

20   employer cannot prevail at the summary judgment stage if there is a genuine dispute as to

21   whether the employer engaged in good faith in the interactive process."  *Id*.

22        It is undisputed plaintiff did not ask for particular accommodations beyond the

23   intermittent leave he was granted.  However, no evidence in the record supports the conclusion

24   Target fulfilled its duty in the interactive process by anticipating any potential disabilities arising

25   from plaintiff's heart attack or engaging with plaintiff about his challenges and how they could be

26   accommodated.  Target knew plaintiff had been on leave for five months; it knew plaintiff was

27   experiencing memory loss issues and he was challenged by these issues in performing his job.

28   *See* Performance Review Ex. H, ECF No. 49-7.  Nothing suggests plaintiff's supervisors or HR

1    staff discussed his options when he requested leave.  Merely granting leave is not enough to show

2    engagement in finding accommodation.  *Dark v. Curry Cnty.*, 451 F.3d 1078, 1089 (9th Cir.

3    2006) ("[T]he duty to accommodate is a continuing duty that is not exhausted by one effort.").

4    Rather, defendants had an "affirmative obligation to engage in an interactive process in order to

5    identify, if possible, a reasonable accommodation that would permit [plaintiff] to retain his

6    employment."  *Id.* at 1088*; see also Nunes*, 164 F.3d at 1248 (reversing summary judgment where

7    "the record contains no evidence that [defendant] considered any at-work accommodations to

8    reduce the risks it feared").  Summary judgment is denied as to this claim.

9         D.        Retaliation (Claim 3)

10        Plaintiff alleges retaliation in violation of the FEHA, California Government Code

11   section 12940(h).  He claims his protest of the alleged discriminatory acts was the motivating

12   factors for his termination and harassment.  He claims his FMLA and CFRA leaves of absence

13   motivated "heightened scrutiny" of his performance, "singled him out for treatment" and resulted

14   in his termination just five months after his return from FMLA leave.  Compl. ¶ 62.

15        Defendants contend there are legitimate, non-retaliatory reasons for plaintiff's

16   reprimands and termination and that no reasonable fact finder would find his termination to be

17   retaliatory.  Defs.' Mot. at 15.

18        Under the FEHA, it is unlawful for an employer "to discharge, expel, or otherwise

19   discriminate against any person because the person has opposed any practices forbidden under

20   this part or because the person has filed a complaint, testified, or assisted in any proceeding under

21   this part."  Cal. Gov't Code § 12940(h).  To establish a prima facie case of retaliation under this

22   section, a plaintiff must show: (1) he engaged in protected activity; (2) he was thereafter subject

23   to adverse employment action; and (3) a causal link between the two.  *Yanowitz v. L'Oreal USA*,

24   *Inc.*, 36 Cal. 4th 1028, 1042 (2005); *Mathieu v. Norrell Corp.*, 115 Cal. App. 4th 1174, 1185

25   (2004).  "Essential to a causal link is evidence that the employer was aware that the plaintiff had

26   engaged in the protected activity."  *Morgan*, 88 Cal. App. 4th at 70 (internal quotation marks

27   omitted).  As with the disability discrimination cause of action, analysis of the retaliation cause of

28

21

1    action proceeds under the *McDonnell Douglas* burden-shifting framework. *See Joaquin v. City of*

2    *Los Angeles*, 202 Cal. App. 4th 1207, 1219–22 (2012).

3              It is undisputed that plaintiff suffered an adverse employment action after

4    complaining to Jenine Smith, Dana Stansel, and Chris Whitehurst about his alleged harassment.

5    Joseph Decl. ¶¶ 35-36.  The question is whether a factfinder could find a causal link between the

6    two.  Plaintiff's evidence consists of sworn statements from coworkers who noticed he was being

7    closely watched by group leaders upon his return to work.  *See* Slater Dep., Acevedo Decl.,

8    Brown Decl., Dye Decl., ECF Nos. 47-1, 36-8, 37-1.  In or about late April 2010, plaintiff went to

9    two supervisors, Dana Stansel and Chris Whitehurst, and a Human Resources representative,

10   Jenine Smith, to complain about his alleged harassment.  Decl. of Joseph at 11.  According to

11   plaintiff, he was approached by defendant Heeke after his discussion with General Manager Dana

12   Stansel about his alleged harassment.  Joseph Decl. at 11.  Later, on April 19, 2010, his

13   performance review was generally positive, but he was labeled a "bottom performer" by Lance

14   Cason even though his alleged violations were relatively minor and infrequent in the course of his

15   employment.  Performance Review, Ex. H, ECF No. 49-7.  After returning from his first leave

16   following his heart attack, between March and July of 2010, he was issued two Corrective

17   Actions, twice as many as he had received in his previous fifteen years of employment.  Joseph

18   Decl. at 7-8, 9.  Plaintiff was terminated in July 2010, two months after being placed on

19   intermittent FMLA leave for stress in May.  Ex. I, ECF No. 49-9.

20             The temporal proximity between plaintiff's complaints and termination is

21   sufficient to defeat summary judgment.  *See Arn v. News Media Grp.,* 175 F. App'x 844, 846 (9th

22   Cir. 2006) (citing *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) (Plaintiff's

23   establishment of "temporal proximity alone is sufficient to establish a genuine issue of material

24   fact as to whether a causal link exists.").  The frequency of corrective actions after his heart

25   attack, and his coworkers' observations also could lead a reasonable factfinder to find for

26   plaintiff.  *Savina v. Robert Reiser & Co.*, Inc., 363 F. App'x 494, 496 (9th Cir. 2010) (denying

27   summary judgment where plaintiff relies not only on his own detailed testimony, but also on the

28

1   declarations of several former customers and a former co-worker).  Summary judgment is denied

2   as to plaintiff's retaliation claims under FEHA.

3        E.        Discrimination on the Basis of Age (Claim 9)

4        Plaintiff, who was 53 years old at the time of his termination, claims a violation of

5   the ADEA based on harassment and replacement by a younger individual.  Compl. ¶ 130.

6   Plaintiff offers as evidence only written Corrective Actions from 2009 to 2010, showing that

7   employees under the age of forty who threw boxes or made comments similar to plaintiff's[5]

8   exhibited that behavior on more than one occasion before it resulted in a Corrective Action.  Decl.

9   of Garcia Ex. A-1, ECF No. 43.

10        Under the ADEA, employers may not "fail or refuse to hire or . . . discharge any

11   individual [who is at least forty years old] or otherwise discriminate against any individual with

12   respect to his compensation, terms, conditions, or privileges of employment, because of such

13   individual's age." 29 U.S.C. § 623(a)(1).  The Supreme Court has identified two theories of

14   employment discrimination: disparate treatment and disparate impact.  *Hazen Paper Co. v.*

15   *Biggins*, 507 U.S. 604, 609 (1993) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324,

16   335-36 n.15 (1977)).  Plaintiff relies on disparate treatment.  Compl. at 24.

17        The court evaluates ADEA claims that are based on circumstantial evidence of

18   discrimination, as here, by using the three-stage burden-shifting framework provided by

19   *McDonnell Douglas*.  *Enlow v. Salem-Keizer Yellow Cab Co*., 389 F.3d 802, 812 (9th Cir. 2004).

20   Under this framework, the employee must first establish a prima facie case of age discrimination.

21   *Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1281 (9th Cir. 2000).  To make out such a case, it is

22   essential that the employee demonstrate he was "(1) a member of the protected class (age 40–70);

23   (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially

24   younger employee with equal or inferior qualifications."  *Sims v. WorldPac, Inc., No*. C 12-05275

25   /////

26   _____

[5] These comments were characterized by Target as "non-brand" utterances.  To determine
27   "non-brand" behavior, Human Resources generally considers whether profanity was used,
whether the interaction occurred with a team observing it, or other mitigating factors.  Plaintiff's
28   yelling was considered to be "non-brand" behavior.  AMF 126.

1   JSW, 2014 WL 4089201, at *3 (N.D. Cal. Aug. 19, 2014) (quoting *Nidds v. Schindler Elevator*

2   *Corp*., 113 F.3d 912, 917 (9th Cir. 1997)).

3          Although plaintiff alleges he "believes" he was replaced by someone younger than

4   him (Compl. ¶ 135), he has not offered any evidence in support.  He says he was treated less

5   favorably than his colleagues under the age of forty, and produces examples of other employees'

6   Corrective Actions issued only after similar behavior persisted for longer than his did.  However,

7   the age of the other employees is not discernible from any of plaintiff's documents.  Plaintiff has

8   not shown a reasonable factfinder could find any disparate treatment on the basis of age.

9   Summary judgment is granted as to this claim.

10          F.          Discrimination and Retaliation on the Basis of Race (Claims 10, 11, 12)

11                 1.          Title VII/FEHA

12          Defendants argue summary judgment should be granted as to plaintiff's claims of

13   racial discrimination and harassment because plaintiff has failed to show a prima facie case of

14   discrimination or harassment.  Defs.' Mot. at 18.  Plaintiff argues triable issues exist because

15   plaintiff was disciplined for conduct other non-minority employees were not.  Opp'n at 14.

16          Discrimination claims on the basis of race are analyzed under the *McDonnell*

17   *Douglas* burden-shifting analysis.  *Surrell v. California Water Service Co*., 518 F.3d 1097, 1103,

18   1105 (9th Cir. 2008) (applying *McDonnell Douglas* to Title VII and section 1981 claims); *Guz*,

19   24 Cal.4th at 354 (applying *McDonnell Douglas* to FEHA claims). As discussed above, under

20   *McDonnell Douglas*, plaintiff must first establish a prima facie case of discrimination by showing

21   (1) he is a member of a protected class, (2) he was performing the position he held competently,

22   (3) he suffered an adverse employment action, and (4) "circumstances . . . give rise to an

23   inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253

24   (1981); *Guz*, 24 Cal. 4th at 355.  If plaintiff meets this burden, the burden of production shifts to

25   the employer to present legitimate reasons for the adverse employment action.  *Burdine*, 450 U.S.

26   at 254.  An employer's reasons need not rest upon true information.  *Villiarimo v. Aloha Island*

27   *Air, Inc*., 281 F.3d 1054, 1063 (9th Cir. 2002).  Instead, courts "only require that an employer

28   honestly believed its reasons for its actions, even if its reason is foolish or trivial or even

1  baseless." *Id.* (quotations omitted).  "If the employer carries this burden, and plaintiff

2  demonstrates a genuine issue of material fact as to whether the reason advanced by the employer

3  was a pretext, then the case proceeds beyond the summary judgment stage."  *Coons v. Sec'y of*

4  *U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004); *Reeves v. Sanderson Plumbing*

5  *Products, Inc*., 530 U.S. 133, 143 (2000).

6        Here, there is no direct evidence and also no circumstantial evidence giving rise to

7  an inference of discrimination on the basis of race.  Nothing in the record suggests defendant

8  treated African-Americans differently, or that plaintiff experienced harassment or adverse

9  treatment as a result of his race at any point in his fifteen years with Target.  Accordingly,

10  plaintiff has not shown he could establish a prima facie case of racial discrimination under either

11  Title VII or FEHA.  Even if he were able to establish a prima facie case, defendants have

12  produced evidence supporting their position they had legitimate reasons for terminating plaintiff.

13  *See* Exs. F, G & H, ECF No 49.  And, there is no evidence from which a reasonable factfinder

14  could conclude the termination was pretextual for racial discrimination.  *See Covington v.*

15  *California Dep't of Soc. Servs*., No. C 12-04688 WHA, 2014 WL 1896335, at *8 (N.D. Cal. May

16  12, 2014).  The court finds no triable issue as to discrimination or harassment on the basis of race

17  under Title VII or FEHA, and summary judgment is granted as to this claim.

18        2.      Section 1981

19        Plaintiff also claims discrimination in the form of harassment and retaliation on the

20  basis of race in violation of 42 U.S.C. section 1981.  Compl. ¶ 161.  In fact, a claim under § 1981

21  can only be sustained on the basis of race.  *See White v. Wash. Pub. Power Supply Sys*., 692 F.2d

22  1286, 1290 (9th Cir. 1982).  Plaintiff contends employees that were not African-American were

23  treated differently than African Americans, including himself, with regard to Corrective Actions.

24  He points to evidence in the form of examples of Corrective Actions where non-African

25  Americans who yelled, threw boxes, and caused safety incidents exhibited the behavior on more

26  than one occasion before they received a Corrective Action.  Reply in Opp'n to Separate

27  Statement at 34-35; *see* Ex. A-1 to Decl. of Garcia.

28  /////

1              a.      Harassment/Hostile Work Environment

2              A claim for hostile work environment may be brought under § 1981.  *Manatt v.*

3  *Bank of Am.*, *NA*, 339 F.3d 792, 797 (9th Cir. 2003) (hostile work environment interferes with

4  "enjoyment of all benefits . . . and conditions of the contractual relationship" of employment and

5  "is therefore actionable under § 1981").  To survive summary judgment of a hostile work

6  environment claim under § 1981, plaintiff must raise a triable issue of fact as to whether (1) he

7  was "subjected to verbal or physical conduct" because of his race, (2) "the conduct was

8  unwelcome," and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of

9  [plaintiff's] employment and create an abusive work environment."  *Kang v. U. Lim Am., Inc.*,

10  296 F.3d 810, 817 (9th Cir. 2002).

11             Here, plaintiff does not establish any factual dispute as to any racially-motivated

12  harassment.  Plaintiff has not alleged comments or behavior indicating any harassment or that his

13  reprimands were racially motivated, either explicitly or implicitly.  Plaintiff has not demonstrated

14  a reasonable fact-finder could determine plaintiff experienced a hostile work environment in

15  violation of § 1981.  The court grants defendants' motion for summary judgment on this claim.

16             b.      Retaliation

17             Section 1981 does not include an express retaliation provision, but the Ninth

18  Circuit has concluded it encompasses retaliation claims.  *Manatt*, 339 F.3d at 795.  Plaintiff's

19  retaliation claim is analyzed under the same framework as a claim for retaliation under Title VII.

20  *Id.* at 801; *Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000).  Plaintiff bears the initial

21  burden of establishing a prima facie case of retaliation by showing: (1) he engaged in a protected

22  activity, such as the filing of a complaint alleging racial discrimination; (2) defendants subjected

23  him to an adverse employment action; and (3) a causal link exists between the protected activity

24  and the adverse action.  *Manatt*, 339 F.3d at 800.  If plaintiff makes out a prima facie retaliation

25  claim, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for

26  the adverse employment action.  *See id.*  If the employer articulates such a reason, plaintiff bears

27  the ultimate burden of demonstrating the reason was merely a pretext for a discriminatory motive.

28  *See id.*

1    Plaintiff has shown he is a member of a protected class who suffered an adverse

2    employment action, but does not show he engaged in a protected activity, such as filing a racial

3    discrimination complaint.  Even assuming plaintiff can show he engaged in a protected activity,

4    defendants have articulated a legitimate, non-discriminatory reason for termination because of

5    plaintiff's Corrective Actions.  As with the harassment claim above, plaintiff fails to meet his

6    burden to show a factfinder could conclude the legitimate, non-retaliatory reason for termination

7    was a pretext for racial discrimination.  There are no circumstances from which a factfinder could

8    infer plaintiff's race had anything to do with his reprimands or ultimate termination.  Summary

9    judgment is granted as to this claim.

10        G.        CFRA/FMLA Claims (Claim 13)

11        Plaintiff argues defendants retaliated against him for taking medical leave

12    protected by the FMLA and CFRA with heightened scrutiny at the workplace and eventual

13    termination of his employment.  Opp'n at 13.  Defendants counter there is no evidence defendants

14    treated plaintiff differently because of his medical leave, and defendants terminated plaintiff for

15    legitimate non-retaliatory reasons.  Defs.' Mot. at 18-19.

16        The CFRA adopts the language of the FMLA and California courts have held the

17    same standards apply.  *Liu v. Amway Corp.*, 347 F.3d 1125, 1132 n.4 (9th Cir. 2003).

18    Accordingly, the analysis of the two claims merges.

19        Under the FMLA, it is unlawful for an employer to "use the taking of FMLA leave

20    as a negative factor in employment actions, such as hiring, promotions or disciplinary actions."

21    *Bachelder v. Am. W. Airlines, Inc*., 259 F.3d 1112, 1122 (9th Cir. 2001) (quoting FMLA

22    implementing regulation, 29 C.F.R. § 825.220(c) (emphasis omitted)).  If an employer uses an

23    employee's taking of FMLA leave as a "negative factor" in making "adverse employment

24    decisions," including hiring, promotions or disciplinary actions, the employer interferes with the

25    employee's exercise of FMLA rights in violation of § 2615(a)(1).  *Id*. at 1122–23; *see also Liu*,

26    347 F.3d at 1133 n.7 ("2615(a)(1) applies to employees who simply take FMLA leave and as a

27    consequence are subjected to unlawful actions by the employer.") (emphasis omitted).

28    /////

27

1    To establish a retaliation claim under the FMLA, a plaintiff must show (1) he took

2    "FMLA-protected leave"; and (2) it constituted "a negative factor" in an adverse employment

3    decision. *Bachelder*, 259 F.3d at 1125.  A plaintiff "can prove this claim, as one might any

4    ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Id.*

5    Here, it is undisputed plaintiff took medical leave provided for by the FMLA

6    following a heart attack in 2009; he took additional leave for stress in 2010.  Plaintiff has also

7    pointed to facts suggesting his taking leave constituted a factor in defendants' disciplinary

8    decisions and ultimately defendants' decision to terminate plaintiff's employment.  For example,

9    after plaintiff took a stress day in June 2010, plaintiff avers group leaders Heeke and Moore

10   approached him and reminded him he had received his final warning and any future violations

11   would result in termination.  AMF 215.  Further, plaintiff received an "exceeds expectations" for

12   his annual review in 2009 despite lower than average productivity numbers; however, following

13   his medical leave, plaintiff was identified as a "bottom performer" on his performance review in

14   2010 despite meeting expectations in three of six categories.  Performance Review Ex. H at 3,

15   ECF No. 49-7.

16   Drawing all inferences and viewing all evidence in the light most favorable to

17   plaintiff as the nonmoving party, a reasonable trier of fact could conclude plaintiff was terminated

18   because he took medical leave.  *Anderson*, 477 U.S. at 250.

19   Accordingly, the court denies summary judgment on the FMLA and CFRA claim.

20   H.       Common Law Claims

21          1.      Termination in Violation of Public Policy (Claim 14)

22   Plaintiff alleges he was terminated in violation of the FMLA, CFRA, FEHA, and

23   Title VII among other statutes.  *See* Compl. at 1.  Defendant contends no statutory violations

24   occurred and consequently plaintiff cannot support his termination claim in violation of public

25   policy.  Defs.' Mot. at 19.

26   Under California law, employment is at-will unless the parties contract otherwise.

27   *See* Cal. Lab. Code § 2922.  California courts, however, have carved out a specific exception to

28   this general rule: an employer will be liable if it terminates an employee in violation of public

1    policy.  *Liu*, 347 F.3d at 1137 (citing *Stevenson v. Superior Court*, 16 Cal. 4th 880 (1997)).

2    "When an employer's discharge of an employee violates fundamental principles of public policy,

3    the discharged employee may maintain a tort action and recover damages traditionally available

4    in such actions."  *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 170 (1980).  The policy in

5    question "must involve a matter that affects society at large rather than a purely personal or

6    proprietary interest of the plaintiff or employer."  *Gilmore v. Union Pac. R. Co.*, 857 F. Supp. 2d

7    985, 986 (E.D. Cal. 2012), *recon. denied in part*, No. CIV. S-09-2180 KJM, 2012 WL 3205233

8    (E.D. Cal. Aug. 2, 2012).  The policy underlying a discharge claim may be based in federal or

9    state law.  *Green*, 19 Cal. 4th 87–88.

10          Courts have addressed the statutes on which plaintiff relies here:  Discharge in

11   violation of the CFRA constitutes wrongful discharge in violation of public policy.  *Liu*, 347 F.3d

12   at 1137 (citing *Nelson v. United Tech.*, 74 Cal. App. 4th 597, 612 (1999)).  Violation of the

13   FMLA also constitutes a violation of public policy, *id.*, as does termination in violation of Title

14   VII.  *McCarthy v. R.J. Reynolds Tobacco Co.*, 819 F. Supp. 2d 923, 937 (E.D. Cal. 2011).

15          Accordingly, because there are triable issues of material fact as to whether plaintiff

16   was terminated in violation of the Title VII, FMLA, CFRA, and FEHA, the court denies summary

17   judgment on the termination in violation public policy claim.

18          2.      Breach of Covenant of Good Faith and Fair Dealing (Claim 15)

19          Plaintiff contends an employment contract existed between plaintiff and defendant

20   that included an implied covenant of good faith and fair dealing.  Compl. at 31; Opp'n at 15.

21   Plaintiff further contends that defendant breached that covenant by harassing and ultimately

22   terminating plaintiff.  *Id.*  Defendant argues plaintiff relies on nonexistent statutory violations to

23   claim a breach of good faith and fair dealing.  Defs.' Mot. at 19.

24          As a threshold matter, this claim must be predicated upon the existence of an

25   underlying contract.  *Mayfield v. Cnty. of Merced*, No. 1:13-CV-1619, 2014 WL 2574791, at *16

26   (E.D. Cal. June 9, 2014), *report and recommendation adopted*, No. 1:13-CV-1619, 2014 WL

27   3401177 (E.D. Cal. July 10, 2014); *see also Kim v. Regents of the University of California*, 80

28   /////

1   Cal. App. 4th 160, 164 (2000), *citing Smith v. City and County of San Francisco*, 225 Cal. App.

2   3d 38, 49 (1990).

3          Here, plaintiff alleges a contract exists because he was told by defendant prior to

4   beginning work at defendant's warehouse that he would have a job as long as he came to work on

5   time and did his job. Opp'n at 15. Defendant does not dispute this fact or the existence of an

6   agreement. Defs.' Mot. at 19. For purposes of this motion, the court assumes an agreement

7   exists and includes a term requiring both parties to act in good faith. *Foley v. Interactive Data*

8   *Corp.*, 47 Cal. 3d 654, 684 (1988) (all employment contracts include an implied covenant of good

9   faith and fair dealing).

10          The court next considers whether a question of fact exists regarding defendants'

11   alleged breach of the contract. The covenant of good faith and fair dealing "exists merely to

12   prevent one contracting party from unfairly frustrating the other party's right to receive the

13   benefits of the agreement actually made." *Tomada v. Home Depot U.S.A.*, Inc., No. 13-CV-1647,

14   2014 WL 2538792, at *17 (N.D. Cal. June 3, 2014) (citations and internal quotation marks

15   omitted)). It requires only that, when a contract provides a party with discretion, that discretion

16   be exercised in good faith and in accordance with fair dealing. *Id.*

17          As discussed above, defendant points to evidence of good cause for exercising its

18   discretion to terminate plaintiff's employment, but it remains disputed whether this cause was

19   pretextual. A dispute of material fact exists regarding the cause of plaintiff's termination and

20   whether the termination was in good faith, or was the result of unlawful discrimination. As the

21   court resolves all disputes in favor of the nonmoving party at this stage, the court denies the

22   motion for summary judgment on this claim.

23          3.     Intentional Infliction of Emotional Distress (Claim 16)

24          The elements of an IIED claim are: "(1) extreme and outrageous conduct by the

25   defendant with the intent of causing, or reckless disregard of the probability of causing, emotional

26   distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and

27   proximate causation of the emotional distress by the defendant's outrageous conduct." *Wynes v.*

28   *Kaiser Permanente Hospitals*, 936 F. Supp. 2d 1171, 1194 (E.D. Cal. 2013).

1          Courts have set a high bar for what constitutes sufficiently outrageous conduct.

2   *Haley v. Cohen & Steers Capital Mgmt.*, Inc., 871 F. Supp. 2d 944, 960 (N.D. Cal. 2012).  The

3   employer's conduct must be more than "mere profanity, obscenity, or abuse, without

4   circumstances of aggravation . . . ."  *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1128

5   (1989).  It must be so extreme and outrageous as to go "beyond all possible bounds of decency,

6   and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Alcorn v.*

7   *Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 499 n.5 (1970).

8          Case law applying this standard confirms the heavy burden a party in plaintiff's

9   shoes has.  *See, e.g., Haley*, 871 F. Supp. 2d at 944 (rude and offensive comments about

10  plaintiff's cancer diagnosis insufficient to establish IIED claim); *Schneider v. TRW, Inc*., 938 F.2d

11  986 (9th Cir. 1991) (plaintiff's supervisor's allegedly screaming, yelling, and making threatening

12  gestures while criticizing her job performance insufficient); *Janken v. GM Hughes Electronics*, 46

13  Cal. App. 4th 55 (1996) (no intentional infliction of emotional distress for firing in violation of

14  FEHA based on age); *Yurick v. Superior Court*, 209 Cal. App. 3d 1116 (1989) (comments that

15  plaintiff was over forty and senile did not give rise to claim for intentional infliction of emotional

16  distress); *Trerice v. Blue Cross of California*, 209 Cal. App. 3d 878 (1989) (plaintiff-employee

17  presented with a termination package, then told she would still be employed, then told she would

18  actually be terminated, and then presented with less advantageous termination package was not

19  sufficient); *Ankeny v. Lockheed Missiles and Space Co.*, 88 Cal. App. 3d 531 (1979) (plaintiff-

20  employee wrongly denied promotions and transferred from job to job, assigned inappropriate

21  tasks, and personally insulted).

22         Even assuming without deciding that plaintiff has suffered the requisite degree of

23  emotional distress, defendant's conduct does not rise to the level required for an IIED claim.

24  Here, even if defendants supervised plaintiff more closely than other employees, spoke to plaintiff

25  about his heart attack in a hostile manner, and inadequately trained its supervising employees on

26  implementation of workplace policies, plaintiff has not established a cause of action for

27  intentional infliction of emotional distress.  Defendants' conduct is not so extreme and outrageous

28  /////

1   as to go "beyond all possible bounds of decency . . . ." *Alcorn*, 2 Cal. 3d at 499 n.5.  Accordingly,

2   the court grants defendants' motion for summary judgment on this claim.

3          I.        Punitive Damages

4                  Lastly, defendants move for summary judgment of plaintiff's prayer for punitive

5   damages, contending there is no evidence to suggest any of its officers, directors or managing

6   agents engaged in oppressive, fraudulent or malicious conduct in connection with any adverse

7   employment actions against plaintiff.  Defs.' Mot. at 19-20.  Plaintiff contends he is entitled to

8   punitive damages from all defendants: Moore and Heeke for their malicious conduct, and Target

9   for its actions in allowing a system of discipline with unfettered discretion, giving rise to

10  discriminatory actions.  Opp'n at 19-20.  He also contends Target is liable for punitive damages

11  under a theory of ratification.  He argues Target ratified the action in this case when it failed to

12  investigate his termination in relation to his disability.  *Id.*

13                 Punitive damages are recoverable for FEHA violations.  *Commodore Home*

14  *Systems, Inc. v. Superior Court*, 32 Cal.3d 211, 220, 221 (1982) ("[I]n a civil action under [ ]

15  FEHA, all relief generally available in noncontractual actions, including punitive damages, may

16  be obtained").  Because one of the defendants is a corporation, the evidence ultimately must

17  demonstrate an officer, director or managing agent of defendant committed, authorized or ratified

18  an act of malice, oppression or fraud to create a genuine issue of material fact on punitive

19  damages.  *See White v. Ultramar, Inc*., 21 Cal. 4th 563, 569 (1999).  Specifically, "[a]n employer

20  shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the

21  employer, unless the employer had advance knowledge of the unfitness of the employee and

22  employed him or her with a conscious disregard of the rights or safety of others or authorized or

23  ratified the wrongful conduct for which the damages are awarded or was personally guilty of

24  oppression, fraud, or malice."  *Id.* (citing § 3294, subd. (b)).  If the employer is a corporate

25  employer, as here, "the advance knowledge and conscious disregard, authorization, ratification or

26  act of oppression must be on the part of an officer, director, or managing agent of the

27  corporation."  *Id*.

28  /////

1    Defendants Heeke and Moore are the only employees plaintiff says took adverse

2    employment actions against him.  Joseph Decl. ¶¶ 27, 43; *cf.* Compl. ¶ 31.  Neither Heeke nor

3    Moore, as "Group Leaders," were officers or directors of defendant Target.  Heeke Decl. ¶¶ 2, 29,

4    33; Moore Decl. ¶¶ 2, 13, 17.  Thus, punitive damages would be triable only if the evidence

5    showed Heeke and Moore work for Target in managing agent capacities.  "[B]y selecting the term

6    'managing agent,' and placing it in the same category as 'officer' and 'director,' the Legislature

7    intended to limit the class of employees whose exercise of discretion could result in a corporate

8    employer's liability for punitive damages."  *White*, 21 Cal. 4th at 573.  "In order to demonstrate

9    that an employee is a true managing agent under section 3294, subdivision (b), a plaintiff seeking

10   punitive damages would have to show that the employee exercised substantial discretionary

11   authority over significant aspects of a corporation's business."  *Id.* at 577.  No evidence in the

12   record of this case would allow a reasonable factfinder to conclude that Heeke and Moore

13   exercised managing agent discretion.  While they assigned Corrective Actions, they could not be

14   said to have any authority over significant aspects of Target's business, nor did they influence

15   Target policy.

16    Corporate ratification does not salvage plaintiff's claim.  "[R]atification generally

17   occurs where, under the particular circumstances, the employer demonstrates an intent to adopt or

18   approve oppressive, fraudulent, or malicious behavior by an employee in the performance of his

19   job duties."  *Coll. Hosp. Inc. v. Superior Court*, 8 Cal. 4th 704, 726 (1994).  "Corporate

20   ratification in the punitive damages context requires actual knowledge of the conduct and its

21   outrageous nature."  *Id.*; *see also* Cal. Civ. Code § 3294(b) (providing for imposition of punitive

22   damages against a corporation only upon a showing of the requisite mental state of an officer,

23   director or managing agent).  The only potential opportunity for Target to have discovered the

24   alleged conduct is through review of plaintiff's termination.  That review was conducted by a

25   Human Resources employee, Stephanie Gorgos, and plaintiff has not alleged let alone shown she

26   was a director or managing agent.  *See* Compl.; Opp'n at 18-19.

27    Without facts indicating ratification or that defendants Heeke and Moore had

28   "substantial discretionary authority over vital aspects of [defendant's] business" and "ultimately

1   determined corporate policy," the court does not find whether any defendant qualified as a

2   managing agent to be a triable issue.  *Yeager v. Corr. Corp. of Am.,* 944 F. Supp. 2d 913, 931

3   (E.D. Cal. 2013) ("a triable issue on punitive damages could arise only if the evidence showed

4   they were working for Defendant in managing agent capacities.").  The court grants summary

5   judgment for defendants on the issue of punitive damages.

6   V.      CONCLUSION

7             For the foregoing reasons, the court orders as follows:

8             1.  Defendants' Motion for Summary Judgment is GRANTED as to plaintiff's

9                 claims of:  harassment on the basis of disability (claim 2); discrimination on

10                the basis of age (claim 9); discrimination on the basis of race (claims 10, 11,

11                12); intentional infliction of emotional distress (claim 16); and his prayer for

12                punitive damages.

13            2.  Defendants' Motion for Summary Judgment as to all other claims is DENIED.

14            IT IS SO ORDERED.

15   DATED:  January 23, 2015.

16

17                                                    _____

18                                                    UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28